IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | 1:16CR205-2 |
| v. | ) | 1:16CR205-3 |
| | ) | 1:16CR205-4 |
| SHANNON MICHELLE DRAKE | ) | |
| RONALD KEITH EARNEST | ) | |
| ROBERT THOMAS TAYLOR | ) | |

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Presently before this court is the Sealed Motion to Dismiss the Third Superseding Indictment Based on Pre-Indictment Delay filed by Defendant Robert Taylor ("Taylor").[1] (Doc. 157.) Taylor has filed a brief in support of this motion, (Doc. 158), to which the Government has responded, (Doc. 174). On March 8, 2018, this court held a motion hearing and heard arguments on

---

[1] Although the parties in this case have sealed their motions and supporting briefs, this court does not find it necessary to seal this Memorandum Opinion and Order. Although this court references Grand Jury testimony in passing, said references were addressed in open court at the motion hearing.

this motion.[2] (Minute Entry 03/08/2018.) At the conclusion of the motion hearing, this court took the motion under advisement. (Id.) For the reasons stated herein, this court will deny Defendant Taylor's motion without prejudice.

I.  **Facts and Procedural History**

On August 29, 2017, charges were brought against Taylor in the Middle District of North Carolina. (See generally Superseding Indictment (Doc. 85).) As reflected in the Superseding Indictment, Taylor is charged with two counts of conspiracy under 18 U.S.C. § 371; thirteen counts of bank fraud under 18 U.S.C. § 1344; and thirteen counts of theft, embezzlement, or misapplication by bank officer or employee under 18 U.S.C. § 656. (See generally id.) The factual allegations within the indictment date back as far as 2003 and

---

[2] At the hearing, Taylor moved for the admission of two sets of polygraph results, to which the Government objected, citing United States v. Prince-Oyibo, 320 F.3d 494, 501 (4th Cir. 2003) (maintaining the Fourth Circuit's per se rule against admission of polygraph evidence). In response, Taylor contended that the Federal Rules of Evidence apply at trial but should not prohibit the admission of polygraph results in a pre-trial hearing, citing United States v. Bellomo, 944 F. Supp. 1160, 1163 (S.D.N.Y. 1996) (allowing introduction of polygraph evidence at a detention hearing). This court sustained the Government's objection, stating, first, that based on the information presented, there is a basis for exclusion given the state of the science at this time, and second, given the differences between the manner in which polygraph tests are administered, even if the evidence were admitted, the court would not assign it any weight.

the conspiracies in question are alleged to have continued from in or around July 2008 until in or around August 2013 and from on or about January 4, 2008, until on or about August 27, 2013. (Id. at 11, 16, 34.)

Taylor alleges the following timeline with respect to the Government's investigation that led to his eventual indictment. The investigation began as early as 2009, when subpoenas were issued to GrandSouth Bank ("the Bank") in relation to a related case. United States v. Harrison, No. 1:10CR411-1 (M.D.N.C.). By June 2012, Taylor's co-defendant in the instant case, Douglas Corriher, had received a target letter. It wasn't until June 2016 that Corriher, along with another co-defendant, Shannon Drake, were indicted. In October 2016, Taylor received a target letter. The next month, November 2016, Taylor's co-defendant Ronald Earnest was indicted. Finally, in August 2017, Taylor was indicted. Taylor contends that this delay violates the due process clause of the Fifth Amendment and warrants the dismissal of the Superseding Indictment. (See Def. Taylor's Br. in Supp. of Mot. to Dismiss the Third Superseding Indictment Based on Pre-Indictment Delay ("Def.'s Br.") (Doc. 158) at 1.)

## II. Legal Standards

The Supreme Court, in United States v. Marion, 404 U.S. 307 (1971), stated that the Fifth Amendment "would require dismissal

- 3 -

of the indictment if it were shown at trial that the pre-indictment delay . . . caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." Id. at 324; accord United States v. Lovasco, 431 U.S. 783 (1977). The Fourth Circuit conducts a two-part inquiry in evaluating a defendant's claim that pre-indictment delay violates due process. United States v. Uribe-Rios, 558 F.3d 347, 358 (4th Cir. 2009); United States v. Automated Med. Labs., Inc., 770 F.2d 399, 403-04 (4th Cir. 1985).

> First, we ask whether the defendant has satisfied his burden of proving "actual prejudice." Second, if that threshold requirement is met, we consider the government's reasons for the delay, "balancing the prejudice to the defendant with the Government's justification for delay." The "basic inquiry then becomes whether the Government's action in prosecuting after substantial delay violates 'fundamental conceptions of justice' or 'the community's sense of fair play and decency.'" If delay results from a protracted investigation that was nevertheless conducted in good faith, the Supreme Court has held that "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time."

Uribe-Rios, 558 F.3d at 358 (citations omitted).

## III. **Analysis**

This court proceeds to consider Defendant Taylor's motion to dismiss in accordance with the Fourth Circuit's two-step

inquiry, first determining whether Taylor has met his burden of proving actual prejudice, and second, balancing said prejudice against the Government's justification for delay.

### A. Defendant's Burden of Proving Actual Prejudice

In support of his position, Taylor points to four things as prejudicial in light of this delay: (1) David Burgess, Mr. Taylor's supervisor at the bank, is unavailable for trial due to health conditions that have rendered him incompetent to testify; (2) Jim Medford, the bank's attorney who led its response to the Government's investigation, is likewise unavailable for trial; (3) critical documents have been lost or deleted; and (4) the passage of time has led to memory loss. (Def.'s Br. (Doc. 158) at 9-19.)

The Government responds, contending that Taylor has not established prejudice sufficient to meet the first prong of the test. (Government's Resp. to Def.'s Mot. to Dismiss Indictment Based on Pre-Indictment Delay ("Government's Br.") (Doc. 174) at 3.) The Government cites to Jones v. Angelone, where the Fourth Circuit expanded upon what is required for a defendant to meet his burden of proving actual prejudice. 94 F.3d 900, 907 (4th Cir. 1996). There, the court explained that the requisite prejudice showing

> is a heavy burden because it requires not only that a
> defendant show actual prejudice, as opposed to mere
> speculative prejudice, but also that he show that any
> actual prejudice was substantial - that he was
> meaningfully impaired in his ability to defend against
> the state's charges to such an extent that the
> disposition of the criminal proceeding was likely
> affected.

Id. (citations omitted). With respect to claims of prejudice as a result of witness unavailability,

> courts have generally required that the defendant
> identify the witness he would have called;
> demonstrate, with specificity, the expected content of
> that witness' testimony; establish to the court's
> satisfaction that he has made serious attempts to
> locate the witness; and, finally, show that the
> information the witness would have provided was not
> available from other sources.

Id. at 908. Considering a similar claim of witness unavailability, the Fourth Circuit in United States v. Automated Medical Laboratories, Inc., found that the defendant was prejudiced "only slightly, if at all" by the witness's unavailability where (1) there was no showing that the unavailable witness would have waived his Fifth Amendment right and testified at trial and (2) where the content of his testimony remained highly speculative. 770 F.3d at 404. With this in mind, the court considers each of Taylor's identified sources of prejudice in turn.

Contrary to the Government's contention at the motion hearing on March 8, 2018, the Fourth Circuit does not require a

showing of improper prosecutorial motive in order to receive relief for pre-indictment delay. See Howell v. Barker, 904 F.2d 889, 895 (4th Cir. 1990) ("[W]e cannot agree with the position taken by the State of North Carolina and those other circuits which have held that a defendant, in addition to establishing prejudice, must also prove improper prosecutorial motive before securing a due process violation.").

First, this court finds that the unavailability of David Burgess prejudices Taylor, but only slightly given that much of the expected content of his testimony is highly speculative. Taylor contends that Burgess could have testified as to his mental state at the time in question. (Def.'s Br. (Doc. 158) at 10.) Specifically, Taylor contends that Burgess could have testified to the following: the flow of communications at the Bank, that Taylor had limited communication with Corriher, Taylor's actual knowledge, Taylor's tasks and work products, and as to his own perception of the factoring relationship at issue in this case. (Id. at 12-13.) Taylor contends that no other witness could testify as to these matters as he and Burgess worked closely together and that no documentary evidence could establish these matters as most of their interactions were verbal. (Id. at 13.) On the facts presented, this court finds that the loss of Mr. Burgess's testimony is slightly prejudicial

but does not rise to the level of substantial prejudice required to meet the first prong of the inquiry. See Jones, 94 F.3d at 907.[3]

Second, this court is not convinced that Taylor has, at this time, established that Jim Medford's unavailability is prejudicial to his defense. Taylor states that he anticipates that Medford would have testified that he designated Taylor for document gathering and production because he believed that he was not involved in the transactions at issue and that the Government was well aware of him during this time and chose not to charge him until much later. (Def.'s Br. (Doc. 158) at 14-15.) This expected testimony is highly speculative. Further, Taylor has not made a showing that Medford would or could have waived the Bank's attorney-client privilege and testified about his mental impressions surrounding his representation of the Bank. Consequently, this court finds that Taylor is not

---

[3] This court denies this motion without prejudice to Taylor raising the motion again either during or after trial. In weighing the potential prejudice as to the unavailability of Burgess as a witness, this court has some difficulty not only weighing the effect of the absence of Burgess, but also in determining whether Burgess's testimony would be exculpatory in some fashion. At present, this court has limited knowledge of the details of the alleged unlawful scheme, including the parties', as well as other Bank employees', relationship to the scheme.

prejudiced by Medford's unavailability as a witness. Cf. United States v. Automated Med. Labs., Inc., 770 F.2d at 404.

Third, with respect to any documents that might have been lost or deleted, this court is not convinced that Defendant Taylor has, at this time, made an adequate showing of prejudice. Taylor contends that while he does have access to documents that the Bank produced in response to the Government's subpoenas, he does not have access to documents that might have been irrelevant to the Harrison entities but which would be relevant to his defense. (Def.'s Br. (Doc. 158) at 16.) He contends that these documents "would have illustrated how his work for the Harrison entities was a small part of his overall job duties, but that his work for these entities was consistent with his work for unrelated customers." (Id.) Specifically, Taylor points to wire transfers from this time period, which could have been used to illustrate how the allegedly criminal wire transfers in question were not unique compared to those conducted in the regular course of business. (Id.) At the motion hearing, Taylor's counsel conceded that there might be witnesses who could testify as to there not being anything unusual about these transfers, but their identity and whether they were able to testify has not yet been determined. Taylor similarly points to emails which have since been deleted, but does not allege with

any specificity the content of said emails. (Id.) Consequently, on the limited facts before it, the court finds that any lost or deleted documents do not substantially prejudice Taylor.

Finally, this court is not presently convinced by Taylor's contention that memory loss prejudices his defense. The general assertion that the passage of time will prevent Taylor and other witnesses from recalling information, (Def.'s Br. (Doc. 158) at 17-18), does not rise to the level of specificity required to establish actual prejudice, see Jones, 94 F.3d at 908.[4]

**B.  Prejudice to the Defendant Balanced Against the Government's Justification for Delay**

Turning to the next step of the analysis, Taylor contends that the Government has no justification for its delay. (Def.'s Br. (Doc. 158) at 19.) Specifically, Taylor contends that

> [t]he documents relevant to Mr. Taylor's actions have been available to — and in many cases, in the actual possession of — the government for years. The grand jury transcripts refer to Mr. Taylor in passing no more than a handful of times. The grand jury undertook no substantive additional investigation before adding Mr. Taylor in the Third Superseding Indictment. This is evident because the Third Superseding Indictment adds almost no factual allegations specific to Mr. Taylor, and instead merely adds him as a co-conspirator to factual allegations already made against the other defendants.

---

[4] As previously described in footnote 3 this motion is denied without prejudice as the evidence presented at trial may present a less speculative basis upon which to evaluate whether any memory loss has occurred and, if so, how that might affect Taylor's defense.

(Id.) Taylor does not argue that the Government intentionally delayed in charging him, but instead, contends that the harm caused to him by critical witnesses being unavailable and memories fading "is inconsistent with the fundamental notion of fairness that the Due Process Clause protects." (Def.'s Br. (Doc. 158) at 20.)

The Government, responding, contends that the pre-indictment delay is explained by the reality that "this case took time to investigate because it involves a nominee lending scheme operated by multiple defendants over the better part of a decade." (Government's Br. (Doc. 174) at 7.) Specifically, the Government points to (1) a large volume of document production responsive to subpoenas in 2016 and 2017; (2) a document produced in November 2016 which it believes shows that Taylor had knowledge of the lending scheme, (Id., Ex. A (Doc. 174-1)); and (3) Taylor's co-defendant Douglas Corriher's July 2017 guilty plea, which resulted in a debriefing by the Government. (Government's Br. (Doc. 174) at 8-9.)

At the motion hearing, Taylor took issue with the Government's arguments with respect to the documents produced in 2016 and 2017 and the information obtained from Corriher's debriefing. Taylor contended that the Government failed to point

to any "smoking gun" information learned from these sources that might explain the timing of his 2017 indictment.

Even assuming that the pre-indictment delay caused Taylor substantial prejudice, this court finds that it would be outweighed by the Government's offered explanation of a continuing investigatory process which unearthed new documents relevant to Taylor's criminal liability. This court will accordingly deny Taylor's motion without prejudice to raise this issue again at trial.

## IV. Conclusion

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant Robert Taylor's Sealed Motion to Dismiss the Third Superseding Indictment Based on Pre-Indictment Delay, (Doc. 157), is **DENIED WITHOUT PREJUDICE.**

This the 10th day of April, 2018.

_____
United States District Judge